1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH R. HUSKEY, | Case No. 1:12-cv-00569-AWI-SKO (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION TO DISMISS BE GRANTED IN PART AND DENIED IN PART |
| v. | |
| PAM AHLIN, et al., | (Doc. 45) |
| Defendants. | TWENTY-DAY OBJECTION DEADLINE |
| _____/ | |

### Findings and Recommendations Addressing Defendants' Motion to Dismiss

**I.      Procedural History**

Plaintiff Kenneth R. Huskey ("Plaintiff"), a civil detainee proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on April 12, 2012.  This action is proceeding on Plaintiff's original complaint against Defendants Ahlin, Brown, Craig, and Young ("Defendants") for violating the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

Plaintiff's due process claim arises out of his conditions of confinement at Coalinga State Hospital ("CSH") in Coalinga, California, where he is serving a civil commitment pursuant to Cal. Welf. & Inst. § 6600, et seq.[1]   Plaintiff alleges that he is allergic to synthetic fibers, and

---

[1] California's Sexually Violent Predator Act.

1    Defendants were involved with the failure to provide him with medically necessary all-cotton

2    clothing, which caused Plaintiff to suffer from painful skin rashes.

3         On March 4, 2014, Defendants filed a motion to dismiss.  Fed. R. Civ. P. 12(b)(6).  (Doc.

4    45.)  Plaintiff filed an opposition on April 4, 2014, and after obtaining an extension of time,

5    Defendants filed a reply on May 8, 2014.  (Docs. 48, 51.)  Defendants' motion was submitted

6    upon the record without oral argument, Local Rule 230(*l*), and for the reasons which follow, the

7    Court recommends that Defendants' motion to dismiss be granted in part and denied in part.

8    **II.     Discussion**

9         **A.     Legal Standard**

10        A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a

11   claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of

12   sufficient facts alleged under a cognizable legal theory.  *Conservation Force v. Salazar*, 646 F.3d

13   1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted), *cert. denied*, 132 S.Ct.

14   1762 (2012).  In resolving a 12(b)(6) motion, a court's review is generally limited to the operative

15   pleading.  *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Sanders v.*

16   *Brown*, 504 F.3d 903, 910 (9th Cir. 2007); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-

17   04 (9th Cir. 2006); *Schneider v. California Dept. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir.

18   1998).  However, courts may properly consider matters subject to judicial notice and documents

19   incorporated by reference in the pleading without converting the motion to dismiss to one for

20   summary judgment.  *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

21        To survive a motion to dismiss, a complaint must contain sufficient factual matter,

22   accepted as true, to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678,

23   129 S.Ct. 1937 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955

24   (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret*

25   *Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept the well-pleaded factual

26   allegations as true and draw all reasonable inferences in favor of the non-moving party, *Daniels-*

27   *Hall*, 629 F.3d at 998; *Sanders*, 504 F.3d at 910; *Huynh*, 465 F.3d at 996-97; *Morales v. City of*

28   *Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are still

1   entitled to have their pleadings liberally construed and to have any doubt resolved in their favor,

2   *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012); *Watison v. Carter*, 668 F.3d 1108, 1112

3   (9th Cir. 2012); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011); *Hebbe v. Pliler*, 627

4   F.3d 338, 342 (9th Cir. 2010).

5           **B.      Plaintiff's Fourteenth Amendment Medical Claim**

6                   **1.      Background**

7           As an initial matter, the parameters of Plaintiff's legal claim merit further clarification in

8   light of arguments set forth in Defendants' motion to dismiss.   On October 31, 2012, the Court

9   screened Plaintiff's complaint and found that it stated a claim under the Due Process Clause of the

10  Fourteenth Amendment, arising out of the alleged failure to provide Plaintiff with medically

11  necessary all-cotton clothing.   28 U.S.C. § 1915(e)(2).   (Doc. 7.)   As Plaintiff was previously

12  notified, he is not proceeding, nor may he proceed, on a due process claim arising out of the

13  review and resolution of his patient complaints, or appeals.[2] *Ramirez v. Galaza*, 334 F.3d 850, 860

14  (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).   (Doc. 39, Findings and

15  Recommendations, 4:4-23.)   Because Plaintiff lacks any protected interest in the appeals process,

16  neither his mere dissatisfaction with the response to his appeals nor purported improprieties with

17  respect to the process support a claim under section 1983.   *Ramirez*, 334 F.3d at 860; *Mann*, 855

18  F.2d at 640.

19          However, so long as Plaintiff alleges sufficient facts to demonstrate a causal connection

20  between the constitutional violation at issue and Defendants' actions or omissions, Defendants are

21  not shielded from liability merely because their culpable conduct was somehow intertwined with

22  Plaintiff's pursuit of his appeals.   *E.g.*, *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d

23  1062, 1074-75 (9th Cir. 2013); *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011), *cert.*

24  *denied*, 132 S.Ct. 2101 (2012); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also*

25  *Peralta v. Dillard*, 744 F.3d 1076, 1085-87 (9th Cir. 2014) (while mere administrative review

26  without any awareness of risk to inmate's health provides no basis for liability under section 1983,

27  ―――――――――――――

28  [2] To avoid confusion with the complaint upon which this action proceeds in court, the Court will refer to Plaintiff's patient complaints as appeals.

1    an administrator who knowingly fails to respond to an inmate's requests for help may be liable);

2    *Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006) (prison administrators are liable if they

3    knowingly fail to respond to a request for help).

4         With respect to claims brought under California law, the Court's screening order identified

5    only a Fourteenth Amendment due process claim arising out of medical care and in revisiting

6    Plaintiff's complaint in conjunction with Defendants' motion to dismiss, the Court finds no basis

7    for deviation from that finding.  Although Plaintiff states the Court has supplemental jurisdiction

8    over state law claims, Plaintiff did not plead any specific state law claims.  Plaintiff makes a

9    reference to "medical negligence" on the first page, but he does so in the context of "deliberate

10   indifference," and his complaint lacks any additional allegations which suggest pursuit of a state

11   law negligence claim, or any other state law claims.  (Doc. 1, Comp., p. 1.)  Although Plaintiff is

12   entitled to liberal construction because he is proceeding pro se, claims must nevertheless be pled

13   with enough sufficiency to provide notice of the claims bases.[3]  Underscoring the Court's earlier

14   determination is Plaintiff's reiteration in his opposition that this is a medical care case and his

15   express statement of non-opposition to Defendants' argument that his state law claims should be

16   dismissed.  (Doc. 48, Opp., ¶¶25, 49.)

17        Therefore, the Court finds it unnecessary to further address arguments relating to state law

18   claims and it addresses only the motion to dismiss Plaintiff's federal due process claim.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   

---

26   [3] Plaintiff does allege a Fourth Amendment violation but his complaint lacks any facts supporting the existence of a
     recognizable Fourth Amendment claim, and he states in his opposition to Defendants' motion to dismiss that this case

27   is limited to the medical issue.  (Doc. 48, Opp., ¶25.)  Dissemination of false information, which is the vague
     allegation linked to the Fourth Amendment in Plaintiff's prayer for relief, does not give rise to a viable claim for

28   relief. (Comp., p. 19, lns. 2-5.)

## 2.   Summary of Relevant Allegations[4]

At the time of the events in question, Defendant Pam Ahlin was the Executive Director of CSH, Defendant Nancy Brown was a psychiatric technician, Defendant Glen Craig was the clothing room supervisor, and Defendant Rhona Young was a unit supervisor.

Plaintiff alleges that CSH's patient uniform consists of boxer shorts and khaki t-shirts, snap-up shirts, Bermuda shorts and jackets, all of which contain synthetic fibers. (Comp., ¶¶23, 24.) Due to his allergy to synthetic fibers, Plaintiff was diagnosed with dermatitis and authorized by Dr. Colbert, his CSH physician, to receive all-cotton clothing. (*Id.*, ¶¶12, 24.) On July 27, 2009, Plaintiff sought cotton t-shirts via patient appeal. (*Id.*, ¶12 & Ex. A, court record p. 24.) Based on the contents of that appeal, it appears Plaintiff had been granted medical authorization to purchase his own cotton t-shirts, and he was seeking to be allowed to do so without further delay or to be provided with state-issued cotton t-shirts. (*Id.*)

In the appeal response dated April 9, 2010, Inmate Patients' Rights Advocates Daniel Wagoner and Warren Rogers informed Plaintiff that on November 2, 2009, Defendant Craig told them Plaintiff's "order for cotton shirts was received and that [he] would be provided with cotton shirts." (*Id.*, ¶¶14, 18 & Ex. B, p. 26.) On January 20, 2010, Dr. Colbert authorized all cotton t-shirts, size XL, for Plaintiff based on his dermatitis. (*Id.*, Ex. W, p. 90.) Plaintiff received all-cotton t-shirts on January 20, 2010, but he alleges that they were too large and that clothing room personnel never asked him what size t-shirts he wore. (*Id.*, ¶19.)

On July 27, 2010, Plaintiff filed a second appeal regarding Defendant Young's statement to him that the hospital lacked money to buy cotton t-shirts in size L, despite her knowledge that Plaintiff had a medical order for them and that he had visible red bumps on his neck and arms. (*Id.*, ¶25 & Ex. D, p. 38.) Plaintiff alleges that he informed Defendant Young he would have to

---

[4] Plaintiff's claims against Office of Patients' Rights staff were previously dismissed on the ground that staff were not acting under color of state law, and Plaintiff's disagreement with the handling and resolution of his patient appeals and letters does not provide a basis for liability under section 1983. Relevant to resolving Defendants' motion to dismiss is the extent to which Plaintiff's medical need for all-cotton clothing was addressed and the extent of Defendants Ahlin, Brown, Craig, and Young's involvement in that issue. Plaintiff's allegations relating to his dissatisfaction with the resolution of his appeals and letters are intertwined with the medical issues, but the Court's focus is on those facts directly relevant to the medical issues.

purchase his own cotton clothing because he could not endure the constant itching, burning, and spreading rash.  (*Id.*)

On October 1, 2010, Plaintiff wrote a letter to Defendant Ahlin "stressing" to her that Defendants Young and Brown, not Dr. Colbert, were ignoring his medical needs and had falsely told Inmate Patients' Rights Advocates Wagoner and Rogers that he had already received all the cotton clothing ordered for his medical condition.  (*Id.*, ¶26 & Ex. E, p. 40.)   Defendant Young told Plaintiff, however, that the state's budget crisis was behind the delay in complying with the doctor's order, forcing Plaintiff to offer to buy his own clothing because his rash was becoming infected and spreading to his legs.  (*Id.*)

On October 1, 2010, Defendant Ahlin wrote Plaintiff in response to an appeal dated August 10, 2010.  (*Id.*, ¶27 & Ex. F, pp. 42-43.)  In relevant part, Defendant Ahlin wrote, "You also allege that you have not been able to get the correct 100% cotton shirts you were to be provided for a medical condition.  You were provided extra-large cotton shirts which were listed on the non-formulary order."  (*Id.*, ¶28 & Ex. F.)  Plaintiff alleges that "Defendant Ahlin failed to respond to Plaintiff's complaint that the T-shirts were as big as tents."  (*Id.*)  Plaintiff alleges that Defendant Ahlin did not provide a response which could be used to fulfill the doctor's order or provide Plaintiff with cotton clothing.  (*Id.*)

In light of Defendant Ahlin's response and the denial of his July 27, 2010, appeal, Plaintiff sent a letter to the Department of Mental Health, Office of Human Rights, on or around November 1, 2010.  (*Id.*, ¶30 & Exs. H, I, pp. 47, 49.)

Plaintiff alleges that Defendants Ahlin, Brown, and Craig failed conduct an adequate investigation into the conditions he complained of, they obstructed the appeals process, and as of January 20, 2011, he had "still not received medically approved cotton clothing, to include the proper sizes."  (*Id.*, ¶¶31, 32 & Ex. J, pp 51-54.)

On December 6, 2010, Plaintiff filed another appeal regarding Defendant Young's statement that the clothing room was out of stock, instead of out of money.  (*Id.*, ¶33 & Ex. K, p. 56.)  In the appeal, Plaintiff stated he had a doctor's order for cotton t-shirts and cotton pants.  (*Id.*)  Plaintiff also requested permission to purchase his own cotton clothing.

On December 16, 2010, Plaintiff wrote another letter to Defendant Ahlin in which he stated that he had a doctor's order for cotton t-shirts and cotton pants, and he had been trying for more than eighteen months to get CSH to provide him with cotton clothing that fits.  (*Id.*, ¶34 & Ex. L, p. 58.)  Plaintiff demanded to be provided with "clean, comfortable clothing in my size, made of cotton, or [he] [would] purchase [his] own."  (*Id.*)  Plaintiff stated, "When it is denied to me at the package room, I will proceed to sue you and CSH."  (*Id.*)

On December 23, 2010, Plaintiff wrote to Inmate Patients' Rights supervisor Agnes Lintz regarding the situation; and on January 18, 2011, Daniel Wagoner and Kimberly Reynoso responded, stating that Defendant Brown said Plaintiff received cotton shirts, pants, socks, and underwear the week of January 3, 2011.  (*Id.*, ¶¶35, 36 & Exs. M, N, pp. 60, 62.)  In addition, Wagoner told Plaintiff that Defendant Brown said Plaintiff contributed to the delay by failing to go to his primary provider or unit supervisor and that it was difficult to find khaki colored all-cotton clothing, statements Plaintiff describes as false.  (*Id.*, ¶36 & Ex. N, p. .)  Plaintiff's appeal was denied.  (*Id.*)

On January 25, 2011, Plaintiff wrote Defendant Ahlin again and informed her that Defendant Brown lied to the Patients' Rights advocates by stating that Plaintiff had received his clothing.  Plaintiff wrote that when Defendant Young returned, she went to the clothing room and spoke with "Glen," who showed her the clothing log and confirmed that no clothing had been issued to Plaintiff.  (*Id.*, ¶38 & Ex. O, p. 64.)

On January 19, 2011, Acting Executive Director Audrey King responded to Plaintiff's December 15, 2010, appeal or letter, and she stated that Plaintiff was currently being provided with 100% cotton t-shirts and a request for 100% cotton pants was in process.  (*Id.*, ¶39 & Ex. P, p. 66.)

On March 2, 2011, Plaintiff received a Director's Level response to his appeal.  (*Id.*, ¶40 & Ex. P, pp. 67-68.)  The response documented Plaintiff's receipt of extra-large cotton t-shirts, which Plaintiff concedes but contends were too large.  (*Id.*)

Plaintiff alleges that Cathy Cupp, a family friend, subsequently sent him a pair of cotton underwear and a cotton t-shirt, but the items were confiscated as unauthorized.  (*Id.*, ¶¶42, 43 &

1   Ex. R, pp. 78-79.)  Plaintiff's exhibits evidence confiscation of one pair of blue jeans, one polo

2   shirt, one pair of socks, one pair of underwear, and one t-shirt.  (*Id.*, Ex. S, pp. 81-82.)  Plaintiff

3   wrote to Defendant Ahlin regarding the medically approved cotton clothing sent to him by Ms.

4   Cupp.  (*Id.*, ¶44 & Ex. T, p. 84.)  Defendant Ahlin confirmed receipt of the package from Ms.

5   Cupp, and she informed Plaintiff that the clothing was not within hospital guidelines, although the

6   underwear would be released to him.  (*Id.*, ¶45 & Ex. V, p. 88.)

7        On June 22, 2011, the Office of Human Rights responded to Plaintiff's July 27, 2009,

8   appeal and stated that CSH had recently purchased all-cotton clothing for CSH patients but the

9   delivery date was unknown.  (*Id.*, ¶49 & Ex. X, p. 99.) The letter stated that on May 5, 2011, the

10  CSH Administrator purchased all-cotton pants, pull-ons, underwear, sheets, and pillowcases for

11  Plaintiff from K-Mart.  (*Id.*, Ex. X.)  Plaintiff alleges that he did not receive any purchased

12  clothing, but his appeal was nonetheless closed.

13       Plaintiff alleges that he continued to submit repeated requests to Defendants Ahlin, Craig,

14  and Brown, and appeals to the Patients' Rights Office, "requesting the correct size of cotton

15  clothing." (*Id.*, ¶50.)

16                **3.    Statute of Limitations and Availability of Equitable Tolling**

17       This action was filed on April 12, 2012, and Defendants first argue that Plaintiff's claims

18  which accrued prior to April 12, 2010, are barred by the applicable two-year statute of limitations.[5]

19  In opposition, Plaintiff argues that the statute of limitations was tolled while he was exhausting his

20  administrative remedies.   Defendants counter that as a civil detainee rather than a prisoner,

21  Plaintiff does not qualify for statutory tolling based on the disability of imprisonment, and Plaintiff

22  was not required to exhaust, precluding him from meeting the third prong of California's equitable

23  tolling doctrine, which requires reasonable, good faith conduct.[6]

24  _____

25  [5] Civil detainees such as Plaintiff are entitled to application of the "prisoner mailbox rule," and the proof of service attached to the complaint identifies April 10, 2012, as the date of service.  *Jones v. Blanas*, 393 F.3d 918, 926-27 (9th Cir. 2004).  The two days between mailing and filing by the Clerk's Office does not appear to be material, however.

26

27  [6] The Court acknowledges Defendants' request for judicial notice of court records evidencing Plaintiff's knowledge that he is not required to exhaust the administrative remedies, included with their reply.  The Court may take judicial "notice of proceedings in other courts, both within and without the federal system, if those proceedings have a direct relation to matters at issue," *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (internal quotation marks and citation omitted), although "taking judicial notice of findings of fact from another case exceeds the limits of Rule

28

Federal law determines when a claim accrues, and "[u]nder federal law, a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (citation omitted); *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).  Because section 1983 contains no specific statute of limitations, federal courts should apply the forum state's statute of limitations for personal injury actions.  *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Maldonado*, 370 F.3d at 954; *Fink*, 192 F.3d at 914.  California's statute of limitations for personal injury actions was extended to two years effective January 1, 2003.  Cal. Civ. Proc. Code § 335.1; *Jones*, 393 F.3d at 927; *Maldonado*, 370 F.3d at 954-55.

In actions where the federal court borrows the state statute of limitations, it should also borrow all applicable provisions for tolling the limitations period found in state law.  *Jones*, 393 F.3d at 927.  Under California law, prisoners who at the time the cause of action accrued were either imprisoned on a criminal charge or serving a sentence of less than life for a criminal conviction benefit from a two-year tolling provision for damages actions.  Cal. Civ. Proc. Code § 352.1.  Given that Plaintiff is a civil detainee, he is not entitled to the two-year tolling provision set forth in section 352.1, as Defendants argue.

However, California law also provides for equitable tolling during pursuit of administrative remedies.  Equitable tolling "applies when an injured person has several legal remedies and, reasonably and in good faith, pursues one."  *McDonald v. Antelope Valley Community College Dist.*, 45 Cal.4th 88, 100 (Cal. 2008) (citation and internal quotation marks omitted).  The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations - timely notice to the defendant of the plaintiff's claims - has been satisfied, *McDonald*, 45 Cal.4th at 99 (quotation marks and citations omitted), and pursuit of administrative remedies equitably tolls the statute of limitations so long as there was timely notice, lack of prejudice to the defendant, and reasonable, good faith conduct on the part of

---

201," *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003) (overruled in part on other grounds, *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014)).

the plaintiff, *id.* at 101-03.  "Where exhaustion of an administrative remedy is mandatory prior to filing suit, equitable tolling is automatic," but "equitable tolling may extend even to the voluntary pursuit of administrative remedies."  *Id.* at 101 (quotation marks and citation omitted).

In light of *McDonald*, Defendants' argument that Plaintiff cannot demonstrate entitlement to application of the equitable tolling doctrine because his pursuit of administrative remedies was voluntary must be rejected.

"A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint,'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh*, 465 F.3d at 997), *cert. denied*, 131 S.Ct. 3055 (2011), and "'it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim,'" *Von Saher*, 592 F.3d at 969 (quoting *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995)).  Generally, the fact-specific determination regarding applicability of equitable tolling is ill-suited to resolution on a motion to dismiss, *Pesnell v. Arsenault*, 543 F.3d 1038, 1042 (9th Cir. 2008); *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1140 (9th Cir. 2001); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993), and Defendants' argument that mere voluntary pursuit of administrative remedies precludes application of equitable tolling lacks merit, *McDonald*, 45 Cal.4th at 101.  Therefore, at this juncture, the Court determines only that Plaintiff's decision to voluntarily exhaust the available administrative remedies does not preclude him from relying on the doctrine of equitable tolling for his claims which accrued prior to April 12, 2010.

**4.      Failure to State a Fourteenth Amendment Claim**

Next, Defendants argue that Plaintiff's allegations fail to give rise to any claims against them for violation of the Constitution.  Defendants contend that the focus of Plaintiff's appeals was the failure of staff to provide him with the correct size of clothing, which is not a constitutional violation, and that his allegations concerning the failure to properly investigate his complaints about not receiving proper clothing and/or the provision of false information with respect to his receipt of proper clothing do not give rise to a claim.

1    Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or

2    other federal rights by persons acting under color of state law.  *Nurre v. Whitehead*, 580 F.3d

3    1087, 1092 (9th Cir 2009); *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006);

4    *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  "Section 1983 is not itself a source of

5    substantive rights, but merely provides a method for vindicating federal rights elsewhere

6    conferred."  *Crowley v. Nevada ex rel. Nevada Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012)

7    (citing *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S.Ct. 1865 (1989)) (internal quotation

8    marks omitted).  To state a claim, Plaintiff must allege facts demonstrating the existence of a link,

9    or causal connection, between each defendant's actions or omissions and a violation of his federal

10   rights.  *Lemire*, 726 F.3d at 1074-75; *Starr*, 652 F.3d at 1205-08.

11    As a civil detainee, Plaintiff is entitled to treatment more considerate than that afforded

12   criminal pretrial detainees or convicted criminals, *Jones*, 393 F.3d at 931-32, and his right to

13   constitutionally adequate conditions of confinement is protected by the substantive component of

14   the Due Process Clause, *Youngberg v. Romeo*, 457 U.S. 307, 315, 102 S.Ct. 2452 (1982).  A

15   determination whether Plaintiff's rights were violated requires "balancing of his liberty interests

16   against the relevant state interests."  *Youngberg*, 457 U.S. at 321.  Plaintiff is "entitled to more

17   considerate treatment and conditions of confinement than criminals whose conditions of

18   confinement are designed to punish," but the Constitution requires only that courts ensure

19   professional judgment was exercised.  *Youngberg*, 457 U.S. at 321-22.

20    Plaintiff alleges generally that he has an allergy to synthetic fibers and he was prescribed

21   all-cotton clothing by his CSH physician.  Plaintiff alleges that over the course of time, he

22   repeatedly sought all-cotton clothing but the defendants failed to provide him with what he sought.

23   Plaintiff alleges that as a result of having to wear clothing with synthetic fibers, he suffered from

24   pain, burning, swelling, and a bleeding rash.  Plaintiff may base a viable claim for relief on the

25   failure to address his medical needs, but he is required to allege sufficient facts to support the

26   existence of a causal connection between each defendant's actions or omissions and the failure to

27   address his medical need for cotton clothing.  Ascertaining the precise bases for Plaintiff's medical

28   claim against each defendant proves somewhat elusive, as Plaintiff's allegations are at times

1 contradictory and some his allegations take on a different meaning when reviewed in the context

2 of the exhibits he attached to his complaint.

3          **a.**      **All-Cotton T-Shirts**

4       Turning first to Plaintiff's medical need for all-cotton t-shirts, which is by far the clearest

5 issue, Plaintiff's exhibits demonstrate that on January 20, 2010, Dr. Colbert, his CSH physician,

6 prescribed all-cotton t-shirts, size extra-large, due to Plaintiff's dermatitis; and Plaintiff in fact

7 received all-cotton t-shirts, size extra-large, on that date.[7]  (Comp., 6:20-21 & Ex. W.)  Plaintiff

8 alleges that the t-shirts were too large and they violated CSH's dress code, and he began seeking

9 all-cotton t-shirts in size large.  (*Id.*, 6:21-22 & Ex. D.)  However, Plaintiff's medical records note

10 doctor's orders for all-cotton t-shirts in size extra-large on September 8, 2010, October 9, 2010,

11 November 24, 2010, and January 5, 2011.  (Ex. W, pp. 92, 93, 95, 96.)  On March 16, 2011, Dr.

12 Colbert ordered all-cotton t-shirts in size large.  (*Id.*, p. 97.)

13       With respect to Plaintiff's t-shirt claim prior to March 16, 2011, assuming Plaintiff wore a

14 size large, as he alleges, there is no basis for liability against staff who complied fully with a

15 medical order to provide Plaintiff with extra-large all-cotton t-shirts.  Plaintiff's claim that staff

16 interfered with his medical need for all-cotton t-shirts is patently frivolous given that staff

17 complied in full with Dr. Colbert's order on the date the order was issued.

18       With respect to the time period following Dr. Colbert's order of March 16, 2011, for all-

19 cotton t-shirts in size large, the Constitution simply does not provide redress for ill-fitting t-shirts.

20 While there may be some unusual circumstances under which ill-fitting clothing might be found to

21 be a punitive condition, *see Walker v. Sumner*, 14 F.3d 1415, 1421 (9th Cir. 1994) ("The denial of

22 adequate clothing can inflict pain under the Eighth Amendment.") (overruled in part on other

23 grounds, *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S.Ct. 2293 (1995)), those circumstances do

24 not include t-shirts one size too large, *see Jones*, 393 F.3d at 933-35.  At screening, the Court

25 construed Plaintiff's claim as based on the denial of medically necessary all-cotton t-shirts.  The

26

27    [7] To the extent Plaintiff had any earlier medical orders, those orders were not submitted to the Court.  At the pleading stage, Plaintiff is not required to support his allegations with evidence but given that he elected to so and he alleges

28 that the records demonstrate he had a medical need for all-cotton clothing, the absence of any doctor's order prior to January 20, 2010, is relevant.  (Comp., ¶48.)

1  Court did not contemplate the claim as one arising from all-cotton but ill-fitting t-shirts.  The

2  Court finds such a claim to be frivolous and it recommends dismissal of the t-shirt claim, with

3  prejudice.

4                              **b.**     **All-Cotton Pants**

5          Turning next to cotton pants, while Plaintiff sprinkles his complaint with references to

6  medical necessary all-cotton pants, the medical records he submitted in support of his claim do not

7  show any doctor's orders for all-cotton pants until November 18, 2010, at which time Dr. Colbert

8  ordered cotton pants "appropriate size" for Plaintiff.  (Comp., Ex. W, p. 94.)  On March 16, 2011,

9  Dr. Colbert ordered cotton pants in size large.  (*Id.*, p. 97.)

10         Defendant Brown allegedly represented that Plaintiff received all-cotton shirts, pants,

11  socks, and underwear the week of January 3, 2011.  (*Id.*, Ex. J, p. 52.)  However, Plaintiff alleges

12  that Defendant Brown lied and he did not receive any clothing that week, which was confirmed by

13  Defendants Craig and Young on or around January 25, 2011.  (*Id.*, Ex. O, p. 64.)  Furthermore, on

14  January 19, 2011, Audrey King sent Plaintiff a letter which stated in relevant part that an order for

15  cotton pants was *in process*.  (*Id.*, Ex. P, p. 66.)

16         The Court cannot determine from Plaintiff's complaint when he first received cotton

17  pants.[8]  His complaint suggests that at some point, his pursuit became one for cotton clothing in a

18  size he found more suitable.  As with the cotton t-shirts, merely ill-fitting pants or other clothing

19  items provide no basis for a claim under section 1983.  However, unlike with the cotton t-shirts,

20  the Court is unable to determine *when*, following Dr. Colbert's order of November 18, 2010,

21  Plaintiff was provided with some cotton pants.  Without the ability to determine when Plaintiff

22  finally received cotton pants, the Court is also precluded from making a determination as to causal

23  connection between the defendants' actions or omissions and the failure to provide cotton pants in

24  compliance with Dr. Colbert's order.

25         Plaintiff alleges Defendant Young told him, at different times, that the state did not have

26  money for his cotton clothing and that the clothing room was out of stock.  Plaintiff also clearly

27
_____

28  [8] Based on a statement in Plaintiff's opposition, it appears he received five pairs of cotton Dickies pants in May 2011.
(Doc. 48, Opp., ¶42.)  However, in determining the presence or absence of a viable claim, the Court's review is
confined to the complaint.

alleges Defendant Brown lied, misrepresenting to those responding to Plaintiff's appeal that Plaintiff was issued cotton clothing the week of January 3, 2011.  Despite Defendants' argument to the contrary, Defendants Young and Brown's actions at least potentially provide a basis for liability against them under section 1983 arising from their failure to ensure Plaintiff was provided with the clothing his CSH doctor had determined was medically necessary.  Plaintiff's exhibits also evidence that he placed Defendant Ahlin on notice that while staff members were representing he received his medically necessary clothing, he had not received any such clothing. Although *respondeat superior* liability is unavailable under section 1983, a supervisor or administrator who is placed on notice of a violation but fails to take action may be held liable. E.g., *Peralta*, 744 F.3d at 1085-86; *Lemire*, 726 F.3d at 1074-75; *Starr*, 652 F.3d at 1205-06.

In sum, the precise contours for Plaintiff's claims against Defendants Ahlin, Brown, Craig, and Young are not entirely clear, and merely ill-fitting clothing does not give rise to a constitutional claim.  However, to the extent that Plaintiff had medical orders for all-cotton clothing due his allergy and no clothing items were provided, causing Plaintiff to suffer from pain, rashes, etc., Plaintiff may be able to state a claim if he can link one or more of the defendants to the failure to provide the requisite clothing.

What is clear is the mandate that Plaintiff be permitted the opportunity to amend with respect to his medical need for clothing, other than the t-shirts.  *Silva*, 658 F.3d at 1105-06.  In this Circuit, courts "have an obligation where the [plaintiff] is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the [plaintiff] the benefit of any doubt." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Brez v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)) (internal quotation marks omitted).  Furthermore, courts are required to provide notice of the deficiencies in the complaint and an opportunity to amend unless it is absolutely clear that the deficiencies cannot be cured by amendment.  *Akhtar*, 698 F.3d at 1212 (citing *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (per curiam)) (quotation marks omitted). Given the Court's recommendation that Defendants be denied qualified immunity at this juncture, discussed below, the Court recommends that Plaintiff be granted leave to file an amended complaint against Defendants Ahlin, Brown, Craig, and Young.

**5.    Official Capacity and Punitive Damages Claims**

Defendants also seek dismissal of Plaintiff's official capacity claims and his claim for punitive damages.

In his complaint, Plaintiff named Defendants in their individual and official capacities.  As Defendants argue, the Eleventh Amendment bars claims for damages against state officials in their official capacities and they are entitled to the dismissal of any official capacity claims for damages, with prejudice.  *Aholelei v. Dept. of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). The Eleventh Amendment does not bar official capacity claims against state officials for prospective relief, however, *Wolfson v. Brammer*, 616 F.3d 1045, 1065-66 (9th Cir. 2010), and in his complaint, Plaintiff seeks an injunction mandating that he be provided with all-cotton clothing pursuant to his doctor's orders, *see Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) (suits seeking injunctive relief are proper against state officials in their official capacities and do not require the official's personal involvement).

Based on Defendants' earlier-filed opposition to Plaintiff's motions for preliminary injunctive relief and on Plaintiff's opposition to Defendants' motion to dismiss, it appears that Plaintiff's claim for prospective relief is now moot and it is appropriate for this action to proceed as one for damages only.  (Docs. 47, 48.)  If that is the case, Plaintiff should limit his claims to individual capacity claims for damages, brought against the named defendants based on their personal involvement in the alleged violation of his rights.

As for punitive damages, plaintiffs are not limited to the relief sought in their pleadings. Fed. R. Civ. P. 54(c).  Assuming this case proceeds to the liability phase, punitive damages are appropriate should Plaintiff prove, by a preponderance of the evidence, that a defendant's conduct was "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the federally protected rights of others," *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625 (1986), and acts or omissions which are malicious, wanton, or oppressive support an award of punitive damages, *Dang v. Cross*, 422 F.3d 800, 807-08 (9th Cir. 2005).  It would be premature for the Court to dismiss Plaintiff's claim for punitive damages under these circumstances and it declines to make that recommendation.

### 6.    **Qualified Immunity**

#### a.    **Legal Standard**

Finally, Defendants argue that they are entitled to qualified immunity, which shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986). "[T]he qualified immunity inquiry is separate from the constitutional inquiry" and "has a further dimension." *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049-50 (9th Cir. 2002) (citing *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151 (2001)) (internal quotation marks omitted). "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made. . . ." *Estate of Ford*, 301 F.3d at 1049 (citing *Saucier* at 205) (internal quotation marks omitted).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendants' conduct violated a constitutional right, and if so, whether the right was clearly established. *Saucier*, 533 U.S. at 201; *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. *Pearson*, 555 U.S. at 236, 129 S.Ct. at 818 (overruling holding in *Saucier* that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); *Mueller*, 576 F.3d at 993-94.

#### b.    **Clearly Established Right**

In this case, given the lack of clarity in Plaintiff's complaint, the Court elects to proceed directly to the second step of the qualified immunity analysis.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508 (2002).  While the reasonableness inquiry may not be undertaken as a broad, general proposition, neither is official action entitled to protection "unless the very action in question has previously been held unlawful."  *Hope*, 536 U.S. at 739.  "Specificity only requires that the unlawfulness be apparent under preexisting law," *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and state officials "can still be on notice that their conduct violates established law even in novel factual circumstances," *Hope*, 536 U.S. at 741.  The salient question is whether the state of the law during the time of the events would have given a reasonable official fair notice that his or her actions were unlawful and that any mistake to the contrary would have been unreasonable.  *Chappell v. Mandeville*, 706 F.3d 1052, 1056-57 (9th Cir. 2013) (quotation marks omitted); *Hope*, 536 U.S. at 741.

As framed by Defendants, Plaintiff's claims arise from (1) the failure to provide him with smaller, better fitting t-shirts or pants, despite a doctor's order for the precise items they provided, and/or (2) the failure to provide him with boxer shorts or socks despite the lack of any doctor's order for those items.  (Doc. 45, Motion, 23:13-22.)  If that were so, Defendants correctly argue that Plaintiff's rights to smaller clothing in the absence of any order for that size and to additional items in the absence of any doctor's order were not clearly established, entitling them to qualified immunity.

However, to the extent Plaintiff is able to cure the deficiencies identified in his claims, the constitutional violation at issue appears to be the failure to provide Plaintiff with all-cotton clothing for which he had a doctor's order due to an allergy to synthetics.  The events at issue in this action occurred between 2010 and 2012, and by that time, it had long been established that civil detainees such as Plaintiff may not be subjected to conditions which amount to punishment.  *Jones*, 393 F.3d at 932; *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000).  The rights of civil detainees are protected by the substantive component of the Due Process Clause, and "'due process requires that the conditions and duration of confinement bear some reasonable relation to

the purposes for which persons are committed.'" *Jones*, 393 F.3d at 933 (quoting *Seling v. Young*, 531 U.S. 250, 265, 121 S.Ct. 727 (2001)).

A condition is considered punitive if it is intended to punish, or if it is excessive in relation to its non-punitive purpose or is employed to achieve objectives that could be accomplished in so many alternative and less harsh methods, *id.* at 933-34 (quotation marks and citations omitted), and the government bears the burden of demonstrating the existence of legitimate, non-punitive purposes justifying the conditions at issue, *id.* at 934-35.  Even the Eighth Amendment, which applies to convicted criminals and prohibits the wanton and unnecessary infliction of pain, has long required that prison officials refrain from knowingly disregarding inmates' serious medical needs, *e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), and Plaintiff is entitled to more considerate treatment than that afforded convicted criminals, *Jones*, 393 F.3d at 931-32; *Sharp*, 233 F.3d at 1172.  Accordingly, to the extent Plaintiff is able to amend to allege facts supporting a claim that Defendants failed to provide him with medically necessary clothing in contravention of his doctor's orders, causing him to suffer pain, bleeding rashes, etc., they are not entitled to qualified immunity at this juncture.[9]

## III.     **Recommendation**

Based on the foregoing, the Court HEREBY RECOMMENDS:

1.     Defendants' motion to dismiss, filed on March 4, 2014, be GRANTED in part and DENIED in part as follows:

a.     Defendants' motion to dismiss Plaintiff's claims arising from the failure to provide him with all-cotton clothing for failure to state a claim be GRANTED, with prejudice as to Plaintiff's t-shirt claim and any claim arising from ill-fitting clothing but without prejudice as to any claim arising from the non-provision of other medically necessary clothing items;

---

[9] Defendants are not precluded from raising the issue of qualified immunity on another motion to dismiss, should Plaintiff's more specific allegations set forth in an amended complaint provide a basis for that argument.

b.      Defendants' motion to dismiss Plaintiff's pre-April 12, 2010, claims as barred by the statute of limitation be DENIED, without prejudice;

c.      Defendants' motion to dismiss Plaintiff's official capacity claims for damages be GRANTED, with prejudice;

d.      Defendants' motion to dismiss Plaintiff's claim for relief in the form of punitive damages be DENIED; and

e.      Defendants' motion to dismiss based on qualified immunity be DENIED, without prejudice; and

2.      With the exception of all-cotton t-shirts and any ill-fitting clothing, Plaintiff be granted leave to file an amended complaint clarifying the bases for his substantive due process claims against Defendants Ahlin, Brown, Craig, and Young arising out of the failure to provide him with medically necessary all-cotton clothing.[10]

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections must be filed within **ten (10) days** from the date of service of the objections.  Local Rule 304(d).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __July 11, 2014__                                    _____ /s/ Sheila K. Oberto
                                                        UNITED STATES MAGISTRATE JUDGE

---

[10] Plaintiff should not amend in response to these Findings and Recommendations.  If the Findings and Recommendations are adopted in full, Plaintiff will be ordered at that time to file an amended complaint.

19